GRIFFIS, P.J.,
for the court:
¶ 1. In 1970, Freddie Payton was convicted of the forcible rape of an eleven-year-old child, a- crime committed when Payton was fifteen years of age. Payton pleaded guilty and was sentenced to life imprisonment. Payton was paroled in 1984. But he was rearrested in 1986, and his parole was revoked. Payton was then recommitted to custody.
¶ 2. Payton has filed at least two motions for post-conviction collateral relief *74 (“PCR”). The first PCR motion was filed in 1987, and the second PCR motion was filed in 1992. Both PCR motions were either denied or dismissed by the Attala County Circuit Court, and both of those judgments were affirmed without opinion by the Mississippi Supreme Court. See Payton v. State, 546 So.2d 701 (Miss.1989); Payton v. State, 661 So.2d 733 (Miss.1995).
¶3. On April 27, 2010, Payton filed a pleading with the Clerk of the Mississippi Supreme Court. This pleading was styled as, “Application for Leave to Proceed [with a Motion for PCR] in the Trial Court.” In the motion, Payton claimed that: his sentence was illegal; he had not received assistance of counsel regarding his 1970 guilty plea; and his sentence was unconstitutional under Graham v. Florida, — U.S. -, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).[1]
¶ 4. On June 21, 2010, before the supreme court decided his application for leave to file a PCR motion, Payton filed a PCR motion with the circuit court.
¶ 5. One month later, by order dated July 21, 2010, the supreme court denied Payton’s application. The supreme court’s order indicated that the matter was before the panel of Chief Justice Waller and Justices Kitchens and Chandler. The panel determined: “Payton has previously raised two of these issues; therefore, those issues are procedurally barred pursuant to Mississippi] Code Annotated] [section] 99-31-21(3).” The panel also held that there was no merit to Payton’s claim that Graham was an intervening decision that invalidated his life sentence. The panel determined: “Payton was not sentenced to life without the possibility of parole and was, in fact, paroled for a period of time. Upon arrest for violation of parole, he was re-sentenced as an adult. Therefore, Pay-ton’s application should be denied.”
¶ 6. On August 11, 2010, the circuit court entered a judgment to dismiss Payton’s PCR motion. In its judgment, the circuit court held it did not have jurisdiction to consider Payton’s June 21, 2010 PCR motion because the Mississippi Supreme Court had denied his application for leave to file on July 21, 2010. Therefore, the circuit court concluded it lacked jurisdiction to consider the motion. On September 10, 2010, Payton filed his notice of appeal.
DISCUSSION
¶ 7. The Mississippi Supreme Court’s decision in Jackson v. State, 67 So.3d 725 (Miss.2011), obligates this Court to find the supreme court did not have jurisdiction to consider Payton’s “Application for Leave to Proceed in the Trial Court,” which was filed on April 27, 2010, with the Clerk of the Mississippi Supreme Court. We recognize that Jackson was decided seven days after a panel of the supreme court denied Payton’s application; however, it is our obligation to consider this case based on the most recent authority of the supreme court.
¶ 8. Before Jackson, this Court would have affirmed the circuit court’s decision. We would have held that when the supreme court is the last court to exercise jurisdiction over post-conviction matters, jurisdiction over future post-conviction claims is vested in the supreme court rather than a lower court. Evans v. State, 485 So.2d 276, 283 (Miss.1986). Once the supreme court has assumed jurisdiction, the movant must first obtain leave of the supreme court before filing a PCR motion in the circuit court. Id. Now, we must consider Jackson in this analysis.
*75 ¶ 9. Robert Jackson was indicted on a charge of capital murder for a killing that occurred on June 4, 1979. Jackson, 67 So.3d at 726 (¶ 3). Jackson pleaded guilty that same year. Id. at 727 (¶ 3). Jackson was sentenced to life in prison without parole. Id.
¶ 10. Jackson filed his first PCR motion on April 21, 1986. The circuit court dismissed the motion “based on the procedural bar of the statute of limitations and ‘on the basis of its merit.’ ” Id. at (¶ 4). On appeal, the supreme court reversed the circuit court’s judgment and found error in the application of the procedural bar. Id. at (¶ 5). The case was remanded to the circuit court. Id. On remand, the circuit court “either dismiss[ed] or den[ied] Jackson’s PCR motion. Jackson appealed that order to [the supreme court], which affirmed without opinion.” Id. at (¶ 6).
¶ 11. Jackson’s second PCR motion was filed in 1993. The circuit court “either dismissed or denied this motion as well,” and Jackson appealed. Id. The supreme court affirmed the circuit court’s decision ■without opinion. Id. at 728 (¶ 6).
¶ 12. In 1999, Jackson filed an “application” with the supreme court “for leave to proceed in the circuit court with a new PCR motion.” Id. at (¶ 8). The application was denied as a successive writ, pursuant to Mississippi Code Annotated section 99-39-27(9) (Supp.2010). Id.
¶ 13. In 2002, Jackson again sought leave to pursue a PCR motion. Id. at (¶ 9). The supreme court denied Jackson’s application on the basis that it was a successive writ. Id.
¶ 14. In 2004, Jackson filed another pleading with the supreme court that was treated as an “application for permission to seek post-conviction relief in the circuit court.” Id. at (¶ 10). The supreme court denied the application as a successive-writ.
¶ 15. In 2007, Jackson filed a PCR motion. Id. at (¶ 11). The circuit court dismissed the motion as a successive writ. Id. at 729 (¶ 11). On appeal, this Court, once again affirmed the dismissal of the PCR motion. Id. at (¶ 12). This Court concluded that Jackson’s PCR motion was procedurally barred, and we further held that “the circuit court was without jurisdiction to entertain Jackson’s motion absent leave of the supreme court, which Jackson did not obtain because this Court had last exercised jurisdiction in the case.” Id. (quoting Jackson v. State, 67 So.3d 781, 782 (¶¶ 6-7) (Miss.Ct.App.2009)).
¶ 16. Jackson filed a petition for a ■writ of certiorari with the supreme court, which was granted. Id. at (¶ 13). The supreme court issued an opinion that was later withdrawn on rehearing. Id. (¶¶ 13-15). In a modified opinion on rehearing, the supreme court ruled that the circuit court “should exercise initial jurisdiction over Jackson’s PCR motion.” Id. at (¶ 15). The supreme court held:
Where there has been no direct appeal of his conviction or sentence, the prisoner must file this PCR motion ... “as an original civil action in the trial court.” Miss.Code Ann. § 99-39-7 (Rev.2007). But if the prisoner’s conviction and sentence were directly appealed, and either the conviction was affirmed or the appeal dismissed by this Court, then he must file an application in this Court for leave to proceed in the trial court and include the proposed PCR motion with his application. Miss.Code Ann. §§ 99-39-7 (Rev.2007) and 99-39-27 (Supp. 2010).
Jackson, 67 So.3d at 730 (¶ 17).
¶ 17. Jackson had pleaded guilty, so there was no direct appeal. Id. at (¶ 18). As a result, Jackson’s PCR motions should have been filed with the circuit clerk, and no application for permission from the su *76 preme court was required. The supreme court reasoned:
Because there has been no direct appeal of his conviction or sentence, Jackson must file his PCR motions in the trial court. Miss.Code Ann. § 99-39-7 (Rev. 2007). See Martin v. State, 556 So.2d 357, 359 (Miss.1990) (citing McDonall v. State, 465 So.2d 1077 (Miss.1985)) (“In cases where the prisoner has entered a plea of guilty, the trial court has exclusive, original jurisdiction to hear and determine a petition for post-conviction relief.”). Jackson’s original, 1986 “motion to vacate” and his PCR filings in 1993 and 2007 were properly filed PCR motions. But Jackson incorrectly filed in this Court three applications for leave to proceed in the trial court (i.e., to get permission to file new PCR motions in the trial court), in 1999, 2002, and 2004. This Court denied all three applications, finding them to be impermissible successive writs under Section 99-39-27(9).
When we characterized our disposition of Jackson’s 1999 application as a denial, we were stating that the merits of the PCR motion had been reviewed and rejected or that his arguments were barred on res judicata or waiver grounds. See Miss.Code Ann. § 99-39-27(9) (Rev.2007). This was not the case. We did not make a “final determination going to the merits of the underlying conviction and sentence.” Martin, 556 So.2d at 359. Nonetheless, we had, in fact, “exercised jurisdiction” over Jackson’s PCR proceedings, and “there is general language in our prior cases to the effect that the court to last exercise jurisdiction in the case has exclusive, original jurisdiction over the post-conviction petition.” Martin, 556 So.2d at 359 (citation omitted); McDonall, 465 So.2d at 1078. Based on these authorities, the trial court and the Court of Appeals found that, when we “denied” Jackson’s 1999 application, we assumed jurisdiction over Jackson’s PCR proceedings to the exclusion of the trial court. But the cases cited above presupposed that this Court had proper jurisdiction to exercise, which is not the case here.
Pursuant to Section 99-39-7 and Martin, this Court was without jurisdiction to consider Jackson’s 1999, 2002, and 200f applications for leave to proceed in the trial court, because Jackson’s conviction and sentence were never directly appealed. Miss.Code Ann. § 99-39-7 (Rev.2007); Martin, 556 So.2d at 358. The only way in which this Court properly could have considered Jackson’s PCR filings would have been if Jackson had first presented his PCR motion to the trial court, that court had denied relief, and Jackson had appealed that decision to this Court pursuant to Section 99-39-25. Miss.Code Ann. § 99-39-25 (Rev.2007); Martin, 556 So.2d at 358. Regarding Jackson’s misfiled applications, this had not happened, so this Court did not have subject-matter jurisdiction to entertain those applications, at first instance, or the merits of the PCR motions attached thereto.
Put simply, the fatal flaw in Jackson’s 1999, 2002, and 2004 applications was not that they were successive writs, but that they were filed in the wrong court. So we improperly exercised jurisdiction and denied Jackson’s applications. Miss.Code Ann. § 99-39-7 (Rev.2007). We should have merely dismissed the applications without prejudice for being filed in the wrong court and directed Jackson to file his PCR motions in the trial court. Martin, 556 So.2d at 358 (“this post-conviction relief action initiated by Martin must be dismissed without prejudice as having been filed in the wrong court”). We routinely dismiss *77 mistakenly filed applications, but such action by this Court does not strip the trial court of jurisdiction. Martin, 556 So.2d at 359.
Therefore, as this Court was without jurisdiction to entertain them, we vacate and set aside our denials of Jackson’s 1999, 2002, and 2004 applications. While Section 99-39-25 gives this Court jurisdiction to address Jackson’s dismissed 2007 PCR motion, the Warren County Circuit Court should exercise initial jurisdiction over Jackson’s PCR proceedings. Miss.Code Ann. §§ 99-39-25(1), 99-39-7 (Rev.2007).
Jackson, 67 So.3d at 730-31 (¶ 18-22) (emphasis added).
¶ 18. Jackson is squarely on point with the instant case, and it requires that we reverse circuit court’s judgment and remand.
¶ 19. Payton pleaded guilty to forcible rape in 1970. Payton did not have a direct appeal. Payton filed two PCR motions. Both were denied or dismissed by the circuit court and were affirmed without opinion by the supreme court.
¶ 20. Payton believed he had to get permission from the supreme court to bring another PCR motion. Thus, on April 27, 2010, Payton filed his “Application for Leave to Proceed in the Trial Court.” Before the supreme court decided whether to grant or deny the application, Payton filed his PCR motion with the circuit court. The supreme court then denied the application, and the circuit court relied on this denial to dismiss Payton’s PCR motion for lack of jurisdiction.
¶ 21. Based on Jackson, Payton filed in the wrong court. The supreme court did not have jurisdiction. Apparently, Payton was correct to proceed with his PCR motion before the circuit court. As a result, we must reverse the circuit court’s August 11, 2010 judgment where it dismissed the PCR motion based on its lack of jurisdiction. On remand, the circuit court may consider Payton’s PCR motion even though the supreme court denied Payton’s application.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY DISMISSING THE MOTION FOR POST-CONVICTION COLLATERAL RELIEF IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ATTALA COUNTY.
LEE, C.J., BARNES, ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.

. In Graham, the United States Supreme Court held that juveniles may not be sentenced to life without the possibility of parole for crimes other than homicide.